112 T.C. No. 18

UNITED STATES TAX COURT

ROBERT E. WADLOW AND CONNIE V. WADLOW, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No.  21017-96.                    Filed May 11, 1999.

     Ps engaged in horse boarding and training
activities beginning in 1989.  Ps claimed deductions
related to these activities on Schedule C for their
1990, 1991, 1992, 1993, and 1994 taxable years.  Ps
made valid elections on Form 5213, Election To Postpone
Determination as To Whether the Presumption Applies
That an Activity Is Engaged In for Profit, attached to
their income tax returns for 1990, 1991, 1992, and
1993.  R issued notices of deficiency for Ps' 1990,
1991, 1992, 1993, and 1994 taxable years on August 15,
1996, in which deductions related to Ps' horse boarding
and training activities were disallowed.  R
subsequently agreed to such deductions for 1991 and
1992 and also allowed additional deductions related to
Ps' horse boarding and training activities, resulting
in overpayments as to those years, but challenges the
Court's jurisdiction to determine and allow such
overpayments.  Ps did not file amended returns or
execute Form 872 for their 1991 and 1992 taxable years.
<u>Held</u>: Overpayments of Ps' 1991 and 1992 Federal income
tax are not barred by the period of limitations on
credits or refunds.

A. Jerry Busby, for petitioners.

John W. Duncan, for respondent.

OPINION

NIMS, Judge: Petitioners have made overpayments of their 1991 and 1992 Federal income taxes in the following amounts:

| Year | Overpayment |
| --- | --- |
| 1991 | $322 |
| 1992 | 322 |

Unless otherwise indicated, all section references are to sections of the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

After concessions by both parties, the issue for decision is whether Form 5213, Election To Postpone Determination as To Whether the Presumption Applies That an Activity Is Engaged In for Profit, extends the period of limitations for the determination and allowance of overpayments. This case was submitted on the basis of a stipulation of facts.

Petitioners Robert and Connie Wadlow resided in Phoenix, Arizona, at the time they filed their petition. Beginning in 1989, petitioners undertook a horse boarding and training activity (activity), for which they reported income and expenses on Schedules C attached to their income tax returns for 1990, 1991, 1992, 1993, and 1994. Petitioners attached validly

executed Forms 5213 to their returns for 1990, 1991, 1992, and 1993, all of which were timely filed.

Respondent mailed notices of deficiency to petitioners on August 15, 1996, which were timely under section 183(e)(4), see infra, determining deficiencies in income tax of $6,828, $5,763, $7,182, $5,924, and $10,481 for 1990, 1991, 1992, 1993, and 1994, respectively. The deficiency notices addressed only deficiencies arising from deductions for activity-related expenses claimed on Schedules C. Only petitioners' 1991 and 1992 taxable years remain in dispute.

For their 1991 taxable year, petitioners made tax payments of $7,568.37, all of which were credited to their IRS account on April 15, 1992. On May 25, 1992, respondent allowed and paid in full the $277.37 refund claimed by petitioners on their 1991 tax return, resulting in a $7,291 net payment of tax.

For their 1992 taxable year, petitioners made tax payments of $9,255, all of which were credited to their IRS account on or before April 15, 1993.

The deficiency notice for 1991 reflects (1) the disallowance of all Schedule C expenses, totaling $14,702; (2) a correlative adjusted gross income adjustment in the amount of $957; and (3) a related self-employment tax of $1,914.

The deficiency notice for 1992 reflects (1) the disallowance of all Schedule C expenses, totaling $18,855; (2) a correlative

adjusted gross income adjustment in the amount of $1,113; and (3) a related self-employment tax of $2,226.

For purposes of this case, respondent has now stipulated that petitioners are entitled to claim, as to both the years 1991 and 1992, Schedule C expenses in excess of the amounts claimed on the respective returns and disallowed in the deficiency notices, and that they are liable for no self-employment tax for those years.

The result of the above-mentioned stipulation is that (1) petitioners' total corrected income tax liability for 1991 is $6,969, resulting in an overpayment of $322; and (2) petitioners' total corrected income tax liability for 1992 is $8,933, also resulting in a $322 overpayment.

Petitioners did not file amended returns or claims for refund on Form 872 for 1991 and 1992, nor did they agree in writing with respondent to extend the respective periods of limitation for assessment for either year.

The bottom line issue for determination is whether petitioners can recover overpayments in tax for their 1991 and 1992 taxable years. In general, we have jurisdiction to determine the amount of an overpayment in income tax for a taxable year where we find "that there is no deficiency and further * * * [find] that the taxpayer has made an overpayment of income tax for the same taxable year". Sec. 6512(b)(1). When

our decision becomes final, the overpayment must be credited or refunded to the taxpayer.  See id.

Nevertheless, under certain circumstances section 6512(b)(3) limits the allowance of any credit or refund determined by this Court.  This section provides, in pertinent part, as follows:

> (3) Limit on amount of credit or refund.--No such credit or refund shall be allowed or made of any portion of the tax unless the Tax Court determines as part of its decision that such portion was paid--
>
> > (A) after the mailing of the notice of deficiency,
>
> > (B) within the period which would be applicable under section 6511(b)(2), (c), or (d), if on the date of the mailing of the notice of deficiency a claim had been filed (whether or not filed) stating the grounds upon which the Tax Court finds that there is an overpayment, or
>
> > (C) within the period which would be applicable under section 6511(b)(2), (c), or (d), in respect of any claim for refund filed within the applicable period specified in section 6511 and before the date of the mailing of the notice of deficiency--
>
> > > (i) which had not been disallowed before that date,
>
> > > (ii) which had been disallowed before that date and in respect of which a timely suit for refund could have been commenced as of that date, * * *

Thus, since no payments were made after the mailing of the respective notices of deficiency (section 6512(b)(3)(A)), and no claims for refund were filed before the mailing of the respective notices of deficiency (section 6512(b)(3)(C)), only section

6512(b)(3)(B) could be applicable.  Under this latter section, the termination of the period of limitations within which a claim can be filed is tolled by the mailing of the notice of deficiency if a claim for refund could have been filed within section 6511(b)(2), (c), or (d), on the date of the mailing of the notice of deficiency (mailing date).  As stated, no valid refund claims were filed in this case before the respective mailing dates.

Petitioners contend that, pursuant to section 183(e), see infra, section 6511(c) controls by virtue of the filing of Forms 5213 with petitioners' 1990, 1991, 1992, and 1993 returns, because, say petitioners, Form 5213 is tantamount to an "extension by agreement" pursuant to section 6501(c)(4).  Section 6511(c) provides special rules relating to the general limitations on credits and refunds provided in section 6511(a) and (b) when the parties enter into an agreement described in section 6501(c)(4).

Respondent counters that the automatic extension of the period of assessment occasioned by petitioners' section 183(e) election on Form 5213 is not an "agreement" within the meaning of section 6501(c)(4).  Respondent contends that the fact that he did not sign Forms 5213 fails to comply with the requirement under section 6501(c)(4) and section 301.6501(c)-1(d), Proced. & Admin. Regs., that both respondent and the taxpayer consent in writing to extend the period of assessment.

Section 183 disallows (with certain nongermane exceptions) deductions attributable to an activity not engaged in for profit. Section 183(d) provides a rebuttable presumption that an activity will be an activity engaged in for profit if the gross income from the activity exceeds the deductions attributable to the activity for 3 or more of the taxable years in a 5-year period. In the case of an activity which consists in major part of the breeding, training, showing, or racing of horses, "2" is substituted for "3" and "7" for "5". Generally, as to a "horse" activity, if gross income exceeds the deductions for 2 of the 7 years, the activity is presumed to be conducted for profit during the second profit year and all subsequent years during the same 7-year period. See 1 Bittker & Lokken, Federal Taxation of Income, Estates and Gifts, par. 22.5.5, at 22-79 (3d ed. 1999).

Under section 183(e), a taxpayer may elect to postpone a determination of whether the presumption applies until the close of the fourth taxable year (or the sixth year for qualifying horse activities) following the first taxable year in which the taxpayer engages in the activity. An electing taxpayer may file returns in the interim on the assumption that the activity is conducted for profit, and if, under section 183(e)(2), there are 3 or 2 profitable years in the applicable 5-year or 7-year period, the presumption applies to all 5 or 7 years, including years preceding the profit years. See id.

Under section 183(e)(4), if a taxpayer elects a postponement, the statutory period for the assessment of any deficiency attributable to the activity is extended to 2 years after the due date (without extensions) for filing the return for the last taxable year in the 5- or 7-year period to which the election relates. As noted previously, petitioners made valid elections to postpone a determination as to their 1990, 1991, 1992, and 1993 horse activities by attaching properly executed Forms 5213 to their returns for those years.

The Form 5213 attached to petitioners' 1990 return states that 1989 was the first tax year in which petitioners engaged in their horse activity. Thus, under section 183(e)(4), the period of limitations for assessment under the election was extended to April 15, 1998--2 years after the due date (without any extension) for filing petitioners' 1995 return.

Section 6511(c) provides special rules in cases of extension of time by agreement. Under section 6511(c)(1), the time for filing a claim for credit or refund does not expire prior to 6 months after the expiration of the period within which an assessment may be made pursuant to an agreement or any extension thereof under section 6501(c)(4). That section provides for an extension of time for assessment by agreement in writing signed by both the Secretary and the taxpayer, if done before the expiration of the time prescribed in section 6501.

Section 6512(b)(3), in effect, allows a credit or refund of an overpayment if the Tax Court finds, among other things, that the overpayment was made within the period specified in section 6511(c). The latter period comes into play where the time for making an assessment has been extended by reason of a written agreement between the Secretary and the taxpayer under section 6501(c)(4).

In Crawford v. Commissioner, 97 T.C. 302, 307 (1991), we stated that the effect of a section 183(e)(1) election is to modify the normal period of limitations found in section 6501(a) by extending it as provided for in section 183(e)(4). The question with which we are confronted here is whether a section 183(e)(1) election also impacts the extension by agreement provisions of section 6501(c)(4), which, as previously noted, requires the mutual consent in writing of the Secretary and the taxpayer.

Our analysis leads us to conclude that Congress intended that a section 183(e)(1) election (election or section 183 election) supersedes the requirements of section 6501(c)(4) in the limited area within which the election is operative. The legislative history of section 183(e)(4) makes this clear.

The Tax Reform Act of 1976 (TRA 1976), Pub. L. 94-455, sec. 214(a), 90 Stat. 1549, added section 183(e)(4) to the Code. The report of the Senate Committee on Finance notes that temporary

regulations under prior law required a taxpayer who made the election to agree to "extend the statute of limitations for each taxable year in the 5 (or 7) year period to at least 18 months after the due date of his return for the last year in the period." S. Rept. 94-938 (Part 1), at 67 (1976), 1976-3 C.B. (Vol. 3) 49, 105. Such an extension applied to all potential income tax liabilities arising during the period, including liabilities unrelated to deductions subject to section 183 issues. See id.

In explaining the purpose of section 183(e)(4), the Senate report goes on to say that "the making of this election automatically extends the statute of limitations, but only with regard to deductions which might be disallowed under section 183." S. Rept. 94-938 (Part 1), supra at 106. (As we have previously pointed out, the deductions, and the resulting overpayments, in this case arose solely in connection with petitioners' horse boarding and training activities.)

It is thus obvious that by enacting section 183(e)(4), Congress intended to override section 6501(c)(4) in this narrow area, and since a valid election extends the period of limitations on assessment by operation of the law, the requirement of section 6501(c)(4) that there be mutuality by written agreement is inoperative in this area. A taxpayer could not be heard to object that an assessment resulting from

disallowance of deductions in a section 183 election case is invalid from lack of mutuality, and the Commissioner, we believe, may not do likewise as to overpayments.

Respondent argues that if, as in the present case, no claim for refund is filed prior to the mailing of a notice of deficiency, then the amount of the refund is limited to the amount that would be allowable under section 6511(b)(2) if a claim had been filed on the date of the mailing of the notice of deficiency, citing section 6512(b)(3)(B).  Nevertheless, since the period of limitations on assessment of any deficiency arising from deductions relating to petitioners' horse boarding and training activities has been extended by the section 183 election (petitioners' overpayments being related solely to such deductions), which elections we regard as tantamount to section 6501(c)(4) extensions, petitioners could have filed claims for overpayment as of the deficiency notice dates by reason of section 6511(c), even though no such claims were actually filed. Therefore, this Court has jurisdiction to allow such claims insofar as section 6512(b)(3) is concerned.

Respondent also suggests, referring to section 183(e)(4), that the only period extended by a section 183(e) election is the statutory period for the assessment of any <u>deficiency</u> attributable to "such activity."  We believe, and hold, that section 183(e)(4) also extends, mutatis mutandis, the statutory

period for overpayments.  Section 6511(c)(2) provides that a credit or refund may be allowed within 6 months after expiration of the period within which an assessment may be made, when, as here, no claim was filed but the period of assessment was extended by agreement (in this case by operation of law, which we construe as the equivalent of such an agreement).

Section 183(e)(4) substantially expands, in the somewhat complex manner delineated above, the period for assessing any deficiency attributable to an activity in the circumstances described.  Nevertheless, we hold for the sake of consistent treatment that petitioners' right to an allowance of overpayments in connection with their section 183 election be at least coterminous with respondent's authority to make an assessment under section 183(e)(4).

For the above reasons, we determine that there is an overpayment of petitioners' Federal income tax for 1991 and 1992 in the amount of $322 for each respective year, and we hold that such overpayments are not barred by the period of limitations on credits or refunds.

<u>Decision will be entered</u>

<u>under Rule 155</u>.

Reviewed by the Court.

COHEN, CHABOT, PARR, BEGHE, CHIECHI, FOLEY, VASQUEZ, and GALE, <u>JJ</u>., agree with this majority opinion.

CHABOT, and FOLEY, JJ., concurring:  We agree with the majority opinion, and write separately to emphasize that section 183(e)(4) extends the period for assessing a deficiency, but it does not provide an independent basis for extending the limitation period for overpayments.  Nevertheless, the period of limitation for overpayments is extended because a section 183(e)(4) election meets the requirements of a section 6501(c)(4) agreement.

## I.  Statutory Requirements of Section 6501(c)(4) Are Met.

The basic issue before us is whether petitioners' claim for refund was timely.  This Court pursuant to section 6512(b)(1) has jurisdiction to determine the existence and amount of any overpayment of tax.  Section 6512(b)(3)(B) prohibits this Court from awarding a refund unless we determine that petitioners' claim was timely under section 6511.

Section 6511(c) provides that the normal period of limitation for filing a claim for refund may be extended if there is "an agreement under the provisions of section 6501(c)(4) extending the period for assessment of a tax".  Section 6501 provides rules that limit assessment and collection.[1]  More

---

[1]     Sec. 6501 provides, in pertinent part, as follows:

SEC. 6501.  LIMITATIONS ON ASSESSMENT AND COLLECTION.

(a) General Rule.--Except as otherwise provided in this
(continued...)

specifically, section 6501(c)(4) provides that, where the

Internal Revenue Service (IRS) and the taxpayer have consented in

writing, the assessment period is extended.  The accompanying

regulations state that the extension of the assessment period

"[becomes] effective when the agreement has been executed by both

parties."  Sec. 301.6501(c)-1(d), Proced. & Admin. Regs.

---

[1](...continued)
section, the amount of any tax imposed by this title shall
be assessed within 3 years after the return was filed
(whether or not such return was filed on or after the date
prescribed) or, if the tax is payable by stamp, at any time
after such tax became due and before the expiration of 3
years after the date on which any part of such tax was paid,
and no proceeding in court without assessment for the
collection of such tax shall be begun after the expiration
of such period.

* * * * * * *

(c) Exceptions.--

* * * * * * *

(4) Extension by agreement.--Where, before the
expiration of the time prescribed in this section for
the assessment of any tax imposed by this title, except
the estate tax provided in chapter 11, both the
Secretary and the taxpayer have consented in writing to
its assessment after such time, the tax may be assessed
at any time prior to the expiration of the period
agreed upon.  The period so agreed upon may be extended
by subsequent agreements in writing made before the
expiration of the period previously agreed upon.

In section 183(e)[2] the Congress provided rules to facilitate the even-handed administration of the provisions of section 183. In paragraphs (3) and (4) of section 183(e), the Congress gave to the Secretary broad power to determine what should be in the election under section 183(e), required that such an election contain specified elements of an extension agreement, legislatively mandated the IRS's consent to extend the assessment period, and explicitly provided that the assessment period is

---

[2]    Sec. 183(e) provides, in pertinent part, as follows:

SEC. 183.   ACTIVITIES NOT ENGAGED IN FOR PROFIT.

    *      *      *      *      *      *      *

(e) Special Rule.--

    *      *      *      *      *      *      *

    (3) Election.--An election under paragraph (1) shall be made at such time and manner, and subject to such terms and conditions, as the Secretary may prescribe.

    (4) Time for assessing deficiency attributable to activity.--If a taxpayer makes an election under paragraph (1) with respect to an activity, the statutory period for the assessment of any deficiency attributable to such activity shall not expire before the expiration of 2 years after the date prescribed by law (determined without extensions) for filing the return of tax under chapter 1 for the last taxable year in the period of 5 taxable years (or 7 taxable years) to which the election relates.  Such deficiency may be assessed notwithstanding the provisions of any law or rule of law which would otherwise prevent such an assessment.

extended when the taxpayer makes the election; i.e., the taxpayer consents. In effect, the Congress authorized the Secretary to set any appropriate conditions for a specialized extension of the limitation on assessment, prescribed in the statute the nature and extent of this extension, required the Secretary to offer this agreement to any taxpayer on a take-it-or-leave-it basis, and mandated that the Secretary agree; i.e., "consent", to the taxpayer's election.

Thus, the Congress' mandate satisfies the requirement of section 6501(c)(4) that the IRS "consent", and the requirement in section 301.6501(c)-1(d), Proced. & Admin. Regs., that the IRS execute the agreement. In short, a section 183(e) election meets the requirements of a section 6501(c)(4) agreement and the period of limitation for overpayments is extended pursuant to section 6511(c).

## II. The Legislative History Supports This Analysis.

Section 183 was enacted by the Tax Reform Act of 1969, Pub. L. 91-172, sec. 213, 83 Stat. 487, 571-572, to deal with "hobby losses"; i.e., losses in an activity not engaged in for profit. Section 183(d) provided a presumption that an activity is engaged in for profit if a gross income test is satisfied for 2 out of 5 consecutive years. The time periods were modified by later statutes. Special rules were provided for certain horse-related activities. The Congress then became aware of a problem in

applying section 183--some taxpayers were denied the opportunity to use the presumption where the Commissioner challenged the status of the activity before the end of the presumption period. As a result, section 183(e) was enacted by the Revenue Act of 1971 (1971 Act), Pub. L. 92-178, sec. 311, 85 Stat. 497, 525-526. Paragraph (1) of section 183(e) permits a taxpayer to elect to delay the determination of whether the section 183(d) presumption applies.  Paragraph (2) of section 183(e) applies the presumption to all of the years in the testing period; i.e., 5 years generally and 7 years as to horse-related activities.  Paragraph (3) of section 183(e) gives the Secretary broad powers as set forth supra note 2.

The Senate Committee on Finance report explains the 1971 Act as follows:

> The committee is aware that because of the 5- or 7-year periods involved in the case of the presumption, the statute of limitations may run before any action could otherwise be taken under the provision added by the committee.  For this reason, the committee believes that this provision should not generally be applicable unless the taxpayer executes a waiver of the statute of limitations for the 5- or 7-year period and for a reasonable time thereafter.  This will allow the taxpayer time to claim any refunds of tax paid during this period and also will allow the Internal Revenue Service to assess any deficiencies.  [S. Rept. 92-437, at 74 (1971), 1972-1 C.B. 600, emphasis added; see also Staff of Joint Comm. on Taxation, General Explanation of the Revenue Act of 1971, at 71-72 (J. Comm. Print 1972).]

Section 183(e) as enacted in the 1971 Act was identical to the language reported by the Senate Committee on Finance.

The Congress' work was not complete.  There remained a "fly in the ointment" because of restrictions on multiple notices of deficiency for the same tax year, the Treasury's temporary regulations required that section 183 elections be accompanied by general waivers of the statute of limitations.  Thus, all the non-hobby-loss elements of a taxpayer's liability for a year had to be held in suspense until the hobby-loss matters were dealt with.  In order to deal with this limited problem, section 183(e)(4) was enacted by the Tax Reform Act of 1976 (1976 Act), Pub. L. 94-455, sec. 214, 90 Stat. 1520, 1549.  The committee reports described the situation in pertinent part as follows:

> Present law
>
> *     *     *     *     *     *     *
>
> If, at the end of a given year, the taxpayer has not conducted the activity for 5 (or 7) years, a special provision allows the taxpayer to elect to postpone a determination as to whether he can benefit by this presumption until he has conducted the activity for 5 (or 7) years (sec. 183(e)).  This election was added to the Code in 1971. The committee reports at that time express an intent that a taxpayer who makes the election should be required to waive the statute of limitations for the 5 (or 7) year period and for a reasonable time thereafter.  The aim was to prevent the statute of limitations (3 years, in the usual case) from running on any year in the period.  The taxpayer, it was believed, should have time to claim a refund of tax paid by him during the period and the Internal Revenue Service should also have time to assess any deficiency owed by the taxpayer for any year in the period.
>
> *     *     *     *     *     *     *

<u>General reasons for change</u>

\*      \*      \*      \*      \*      \*      \*

        In order to accomplish the purposes which Congress sought when it enacted the look-forward presumption of section 183(e), it is not necessary to keep the statute of limitations open for all issues on the taxpayer's return during the 5 (or 7) year period.  The only issues on which the statute of limitations needs to remain open concern the deductions which will be tested as to whether they are incurred in an activity which the taxpayer engaged in for profit.  <u>Your committee believes that a taxpayer should be able to take full advantage of a statutory presumption which was intended for his benefit, without unnecessarily extending the statute of limitations for items on his return which are unrelated to deductions which might be disallowed under section 183</u>.

        <u>Explanation of provisions</u>

\*      \*      \*      \*      \*      \*      \*

        If a taxpayer makes an election under section 183(e) of present law and postpones a determination whether he engaged in a particular activity for profit, the making of such election automatically extends the statute of limitations, but only with regard to deductions which might be disallowed under section 183.  The taxpayer would not have to agree to extend the statute of limitations for any other item on his return during the 5 (or 7) year period.  On the other hand, even if the taxpayer has petitioned the Tax Court with regard to an unrelated issue on his return for any year in the same period, the Service will be able to issue a second notice of deficiency relating to a section 183 issue as to any taxable year in the period.  [H. Rept. 94-658, at 127-129 (1975), 1976-3 C.B. (Vol. 2) 695, 819-821; see S. Rept. 94-938 (Part 1), at 66-69 (1976), 1976-3 C.B. (Vol. 3) 49, 104-107; Staff of the Joint Comm. on Taxation, General Explanation of the Tax Reform Act of 1976, at 59-62, 1976-3 C.B. (Vol. 2) 71-74; emphasis added and fn. ref. omitted.]

Thus, in the 1976 Act, the Congress reaffirmed that the 1971

Act had resulted in both taxpayers' and the IRS' having

correlative rights to claim refunds and assess deficiencies for

the 5-year (or 7-year) presumption test period, intended "that a taxpayer should be able to take full advantage of a statutory presumption which was intended for his benefit", and understood that the limited modification made by the 1976 Act had the effect of removing the IRS's concern about restrictions on multiple notices of deficiency for the same year.  See S. Rept. 94-938 (Part 1), supra at 66-68, 1976-3 C.B. (Vol. 3) at 104-106.  Thus, we conclude that the Congress intended that an extension of the statute of limitations would be a two-way street; i.e., an extension of the assessment period should be accompanied by an extension of the period of limitation for claiming a refund.

We concluded in Crawford v. Commissioner, 97 T.C. 302, 307 (1991), that we should harmonize sections 183 and 6501 by writing section 183(e) into section 6501(a) for purposes of applying section 6501(c)(4).  Similarly, we should harmonize those sections by writing section 183(e) into section 6501(c)(4). Failure to do so would take away from taxpayers a benefit that taxpayers had under the 1971 Act amendment and that was intended to be left undisturbed by the 1976 Act amendment.

The dissenters suggest that this "statute appears to be clear on its face" (infra p. 31) and that they champion "A literal reading" thereof.  Infra p. 36.  With respect, we suggest it is not so clear what the statutes mean.

We have focused on the language of the statutes in light of the legislative history of the later-enacted provisions of section 183(e), and we discern a congressional purpose that the refund statute of limitations provisions be interpreted in light of section 183(e). The matter before us, then, is how to harmonize sections 183(e) and 6501. In doing so we have interpreted the statutory language in light of the Congress' instructions as to what this language was intended to, and expected to, accomplish.

Our analysis is consistent with the analysis set forth in Crawford v. Commissioner, supra. Instead of limiting ourselves to the text of section 6501(a), which provides that "Except as otherwise provided in this section," the 3-year assessment period is applicable, we examined the legislative history of section 183 and concluded that "a sensible construction of section 183(e)(4) is that it modifies section 6501(a) with regard to a section 183 activity for which an election under section 183(e)(1) has been made." Crawford v. Commissioner, 97 T.C. at 307. We reached this conclusion in Crawford notwithstanding the absence in the section 183 legislative history of any discussion about section 6501(c)(4) agreements' being entered into at any time after the expiration of the assessment period actually prescribed in section 6501. If our harmonizing of sections 183(e)(4) and 6501 was permissible in Crawford--and we believe it was--then a

fortiori the harmonizing we do in the instant case is permissible. Indeed, here we are effectuating explicit expressions of congressional intent. The 1971 Act committee report and the 1976 Act committee report provided that the Congress' action "will allow the taxpayer time to claim any refunds of tax paid during this period [the 5- or 7-year period]". S. Rept. 92-437, supra at 74, 1972-1 C.B. at 600; see also S. Rept. 94-938, supra, 1976-3 C.B. (Vol. 3) at 105. Moreover, the 1976 Act committee report provided "that a taxpayer should be able to take full advantage of a statutory presumption which was intended for his benefit". S. Rept. 94-938 (Part 1), supra, 1976-3 C.B. (Vol. 3) at 105; emphasis added.

COHEN, PARR, BEGHE, CHIECHI, LARO, VASQUEZ, and GALE, JJ., agree with this concurring opinion.

LARO, J., concurring: I agree with the majority's holding that the period of limitations does not prevent petitioners from recovering overpayments of their 1991 and 1992 income taxes. I write separately, however, to set forth my view as to why this is so.

The Court's disposition of this case turns on our answer to the following question that evolves from the text of section 6501(c)(4): "before the expiration of the time prescribed in this section for the assessment of any tax imposed by this title * * *, [did] both the Secretary and the taxpayer[s] * * * [consent] in writing to its assessment after such time"? Like the majority and Judges Chabot and Foley in concurrence, I conclude that the Commissioner and petitioners both did.

Longstanding Supreme Court precedent provides that the term "agreement" as used in section 6501(c)(4) does not require that a taxpayer and the Commissioner enter into an agreement that meets the formal requirements of a contract under applicable law. See Stange v. United States, 282 U.S. 270, 276 (1931); Florsheim Bros. Drygoods Co. v. United States, 280 U. S. 453, 466 (1930). Section 6501(c)(4) simply mandates that the Commissioner and the taxpayer execute a written document that allows the former to assess tax against the latter after the statutory period that would otherwise apply. In the instant case, Form 5213 is that written document. Petitioners prepared Form 5213, and they

signified their agreement to the terms therein by filing it with the Commissioner. The Commissioner, on the other hand, signified his agreement to those terms by accepting petitioners' form without reservation. See Instructions to Form 5213, in which the Commissioner states that the filing of Form 5213 "automatically extends the period of limitations for assessing any income tax deficiency."; see also sec. 183(e)(3) ("An election * * * [under section 183(e)] shall be made at such time and manner, and subject to such terms and conditions, as the Secretary shall prescribe."). Although both section 183(e)(4) and the instructions to Form 5213 speak solely to the ability to assess a deficiency, section 6511(c) acts to allow petitioners to seek a refund during the same period of time under which the Commissioner may assess a deficiency. In this regard, this Court considers an election under section 183(e) to have been made under section 6501(a). See Crawford v. Commissioner, 97 T.C. 302, 307 (1991), wherein the Court stated that section 6501(a) is read as if section 183(e)(4) were written therein.

CHABOT, BEGHE, FOLEY, and VASQUEZ, JJ., agree with this concurring opinion.

RUWE, J., dissenting: Section 6512(b)(1) generally confers overpayment jurisdiction for a taxable year that is otherwise properly before the Court when we find "that the taxpayer has made an overpayment of income tax for the same taxable year". However, this general statutory grant of overpayment jurisdiction is limited by the initial words of section 6512(b)(1)--"Except as provided by paragraph (3)". "[T]he Tax Court's jurisdiction to award a refund is limited to those circumstances delineated in section 6512(b)(3)." Commissioner v. Lundy, 516 U.S. 235, 247 (1996). The outcome in this case is dependent upon whether petitioners meet the requirements of section 6512(b)(3)(B).

"The analysis dictated by section 6512(b)(3)(B) is not elegant, but it is straightforward." Id. at 242. Section 6512(b)(3)(B) provides:

> No such * * * refund shall be allowed or made of any portion of the tax unless the Tax Court determines as part of its decision that such portion was paid--
>
>        *     *     *     *     *     *     *
>
>     (B) within the period which would be applicable under section 6511(b)(2), (c), or (d), if on the date of the mailing of the notice of deficiency a claim had been filed (whether or not filed) stating the grounds upon which the Tax Court finds that there is an overpayment * * *

Based on the facts presented, petitioners can meet the jurisdictional requirements of section 6512(b)(3)(B) only if the

periods for filing their claims for refund were extended by agreement pursuant to section 6511(c).

Section 6511(c) provides that the normal period of limitations for filing refund claims is extended if there was "an agreement under the provisions of section 6501(c)(4) extending the period for assessment of a tax".  Section 6501(c)(4) provides:

> (4) Extension by agreement.--Where, before the expiration of the time prescribed in this section for the assessment of any tax imposed by this title, * * * <u>both the Secretary and the taxpayer have consented in writing to its assessment after such time</u>, the tax may be assessed at any time prior to the expiration of the period agreed upon.  The period so agreed upon may be extended by subsequent agreements in writing made before the expiration of the period previously agreed upon.  [Emphasis added.]

Section 301.6501(c)-1(d), Proced. & Admin. Regs., provides:

> (d) <u>Extension by agreement</u>.  The time prescribed by section 6501 for the assessment of any tax (other than the estate tax imposed by chapter 11 of the Code) may, prior to the expiration of such time, be extended for any period of time <u>agreed upon in writing</u> by the taxpayer and the district director or an assistant regional commissioner.  <u>The extension shall become effective when the agreement has been executed by both parties</u>.  The period agreed upon may be extended by subsequent agreements in writing made before the expiration of the period previously agreed upon.  [Emphasis added.]

It is apparent from the facts in this case that petitioners and respondent never executed a written agreement to extend the period of limitations pursuant to section 6501(c)(4).  It follows that the statutory predicate to our overpayment jurisdiction

under sections 6512(b)(3) and 6511(c) is missing.  Based on the explicit statutory language of sections 6512(b), 6511(c), and 6501(c)(4), we have no jurisdiction to determine overpayments and order refunds in this case.

There is nothing in section 183(e)(4) that changes the foregoing analysis.  Section 183(e) allows a taxpayer to elect unilaterally to postpone a determination of whether an activity was engaged in for profit.  Such an election allows additional time for a taxpayer to qualify for a statutory presumption that his activity was engaged in for profit.  The presumption is dependent upon facts that may occur during a period of 5 to 7 years and thus may not be ascertainable within section 6501(a)'s normal 3-year period of limitations for making assessments.  Of course, if the taxpayer can elect to postpone a challenge to his profit objective to a time that is beyond the normal period of limitations for making assessments, one would expect Congress to allow the Commissioner additional time to challenge the tax aspects of the activity in question.  Section 183(e)(4) therefore provides:

> (4) Time for <u>assessing deficiency</u> attributable to activity.--If a taxpayer makes an election under paragraph (1) with respect to an activity, the statutory period for the <u>assessment of any deficiency</u> attributable to such activity shall not expire before the expiration of 2 years after the date prescribed by law (determined without extensions) for filing the return of tax under chapter 1 for the last taxable year in the period of 5 taxable years (or 7 taxable years)

to which the election relates.  Such <u>deficiency may be assessed</u> notwithstanding the provisions of any law or rule of law which would otherwise prevent <u>such an assessment</u>.  [Emphasis added.]

Section 183(e)(4) explicitly provides that with respect to the taxpayer's activity for which a section 183(e) election is made, the normal statutory period for the "assessment of any deficiency" shall not expire until 2 years after the required filing date of the last return in the 5- or 7-year period referred to in section 183(e).  In the Internal Revenue Code, the terms "deficiency" and "overpayment" have distinctly different meanings and separate statutes of limitations.  Section 6211 generally defines a deficiency as the excess of the correct amount of tax over the amount shown on the return.  Section 6501 governs the period of limitations for assessment of a deficiency. An "overpayment" is the excess of the amount of tax that has been paid over the amount of tax that is properly due.  <u>Bachner v. Commissioner</u>, 109 T.C. 125, 128-129 (1997), affd. without published opinion ___ F.3d ___ (3d Cir., Nov. 20, 1998).  The period of limitations for claiming refunds of overpayments is contained in section 6511.[3]  Section 183(e)(4) extends the normal

_____

[3]In <u>Bachner v. Commissioner</u>, 81 F.3d 1274 (3d Cir. 1996), the Court of Appeals for the Third Circuit explained why expiration of the period of limitations for assessments does not preclude the Commissioner from defending against a claim for refund of an overpayment.

(continued...)

period of limitations only for "assessment of any deficiency" related to the activity in question.  Crawford v. Commissioner, 97 T.C. 302, 307-308 (1991);[4] Estate of Caporella v. Commissioner, 86 T.C. 285, 296 (1986), affd. 817 F.2d 706 (11th Cir. 1987).  Section 183(e)(4) makes no reference to the statutory period for claiming refunds of overpayments.

When it enacted section 183(e)(4), Congress was aware of the difference between the statute of limitations on assessing deficiencies and the statute of limitations on claiming refunds. In order to make a section 183(e) election under the law and

---

(...continued)
> "The language in §6501 refers only to 'limitations on assessment and collection,' and the operative clause of §6501(a) directs only that taxes 'be assessed within 3 years after the return was filed.' * * * A deficiency determination, by which the IRS seeks to establish the taxpayer's additional tax liability, is patently different from a refund determination, by which the taxpayer seeks repayment or credit from the IRS." * * * [Bachner v. Commissioner, 109 T.C. 125, 130 (1997) (quoting Bachner v. Commissioner, 81 F.3d at 1277), affd. without published opinion __ F.3d __ (3d Cir., Nov. 20, 1998).]

[4]In Crawford v. Commissioner, 97 T.C. 302 (1991), we held that a written agreement to extend the period of limitations that was executed after the normal 3-year period of limitations, but before the expiration of the period provided in sec. 183(e), operated to extend the limitations period.  However, we also held that the written agreement was only effective to the extent that the period of limitations had been extended by sec. 183(e)(4). Therefore, we held that the written agreement to extend the period of limitations "would be effective only with regard to assessments arising from deficiencies attributable to the section 183 activity."  Id. at 307 (emphasis added).

regulations existing prior to enactment of section 183(e)(4), the taxpayer and Commissioner were required to execute a written agreement extending the period of limitations for assessing deficiencies <u>and</u> for claiming refunds of overpayments.[5]  When section 183(e)(4) was enacted in 1976, the legislative history explains the reasons for the law as it existed <u>prior</u> to enactment of section 183(e)(4):

> The taxpayer, it was believed, should have time to claim a refund of tax paid by him during the period and the Internal Revenue Service should also have time to assess any deficiency owed by the taxpayer for any year in the period. [S. Rept. 94-938 (Part I), at 67 (1976), 1976-3 C.B. (Vol. 3) 49, 105.]

Congress was aware that an election under prior law enlarged the period of limitations for deficiencies <u>and</u> refunds.  The

---

[5]In 1971, when Congress first recognized the need to enlarge the period of limitations in order to accommodate a sec. 183(e) election, Congress envisioned that such an election would be conditional on a general waiver of the statute of limitations as to both deficiencies and overpayments for the election year. Thus, the Senate committee report states:

> The committee is aware that because of the 5- or 7-year periods involved in the case of the presumption, the statute of limitations may run before any action could otherwise be taken under the provision added by the committee.  For this reason, the committee believes that this provision should not generally be applicable unless the taxpayer executes a waiver of the statute of limitations for the 5- or 7-year period and for a reasonable time thereafter.  This will allow the taxpayer time to claim any refunds of tax paid during this period and also will allow the Internal Revenue Service to assess any deficiencies.  [S. Rept. 92-437 at 74 (1971), 1972-1 C.B. 559, 600.]

1976 change, which added section 183(e)(4), eliminated the requirement for a written agreement that generally waived the statute of limitations and provided that a section 183(e) election would automatically extend the limitation period, but only for "the assessment of any deficiency".  The purpose of section 183(e)(4) was to narrow the scope of the extension required under prior law.  See S. Rept. 94-938 (Part I), supra at 67-69, 1976-3 C.B. (Vol. 3) at 105-107.  By enacting section 183(e)(4), Congress limited the subject matter of the new automatic extension to the "assessment of any deficiency" attributable to the activity that might be subject to section 183.  In Estate of Caporella v. Commissioner, supra, we explained the purpose of section 183(e)(4):

> Without question, the intent of Congress in amending section 183(e) was to automatically extend the period of limitations on assessment of deficiencies arising from "hobby losses" when a taxpayer elects a postponement of a profit determination.  [Id. at 296.]

When it enacted section 183(e)(4), Congress made no provision for extending the period of limitations for claiming a refund of an overpayment.

Where a statute appears to be clear on its face, we require unequivocal evidence of legislative purpose before construing the statute so as to override the plain meaning of the words used therein.  Huntsberry v. Commissioner, 83 T.C. 742, 747-748

(1984); see <u>Pallottini v. Commissioner</u>, 90 T.C. 498, 503 (1988),
and cases cited therein.

The legislative history of section 183(e)(4) is consistent
with the literal language of sections 183(e)(4), 6512(b),
6511(c), and 6501(c)(4).  Senate Report 94-938 explains that
Congress intended that a section 183(e)(4) election would only
extend the period for <u>assessment of a deficiency</u>.

### Explanation of provision

The committee amendment revises present law (sec.
183(e)) to provide that if a taxpayer elects to
postpone the determination of his conduct of an
activity under the presumption provisions, <u>the
statutory period for the assessment of any deficiency</u>
specifically attributable to that activity during any
year in the 5 (or 7) year period shall not expire until
at least two years after the due date of the taxpayer's
income tax return for his last taxable year in the
period.  This provision is the same as that in the
House bill.

If a taxpayer makes an election under section
183(e) of present law and postpones a determination
whether he engaged in a particular activity for profit,
the making of <u>this election automatically extends the
statute of limitations, but only with regard to
deductions which might be disallowed under section 183</u>.
The taxpayer would not have to agree to extend the
statute of limitations for any other item on his return
during the 5 (or 7) year period.  On the other hand,
even if the taxpayer has petitioned the Tax Court with
regard to an unrelated issue on his return for any year
in the same period, the Service will be able to issue a
second notice of deficiency relating to a section 183
issue as to any taxable year in the period.

<u>In order to assure the Service adequate time to
reexamine the section 183 issue</u> after the suspension
period has ended, this new provision <u>allows the Service</u>
two years after the end of the period in which <u>to</u>

contest the taxpayer's deductions. The making of the election extends the statute of limitations on any year in the suspension period to at least two years after the due date of his return for the last year in the period. (The due date is to be determined without regard to extensions of time to file his return for the last year.)

The taxpayer's limited waiver of the statute of limitations would include not only the section 183 issue itself but also related deductions, etc., which depend on adjusted gross income and which might be affected if the deductions are disallowed in accord with section 183.

The provision for this limited waiver is not intended to affect the scope or duration of any general waivers of the statute of limitations which taxpayers have signed (or sign) before the date of enactment of this bill.

Similarly, the bill does not affect general waivers of the statute of limitations which may be signed after enactment, since in order to avoid two controversies relating to overall income tax liability for the same year, a taxpayer may wish to postpone a resolution of non-section 183 issues until the information relating to the section 183 presumption is available. [S. Rept. 94-938 (Part I), supra at 68-69, 1976-3 C.B. (Vol. 3) at 106-107; fn. refs. omitted; emphasis added.]

This legislative history explains that the section 183(e) election "automatically" extends the statutory period for "assessment of any deficiency" attributable to the activity, applies "only with regard to deductions which might be disallowed", "allows the Service" additional time "in which to contest the taxpayer's deductions" regarding the activity, and describes the extension pursuant to section 183(e) as "The taxpayer's limited waiver of the statute of limitations". In

short, the legislative history is perfectly consistent with the literal words of section 183(e)(4). There is nothing in the legislative history to indicate that Congress intended that section 183(e)(4) would extend the period of limitations for claiming refunds or that it would override the specific provisions of section 6501(c)(4).

Absent absurd, unreasonable, or futile results, there is "no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes." United States v. American Trucking Associations, Inc., 310 U.S. 534, 543 (1940). There is nothing that is unreasonable or absurd about providing an extension that is limited to permitting the assessment of a deficiency regarding the section 183 activity in return for allowing a taxpayer to postpone a determination by the Commissioner regarding the same activity. There is no compelling policy-based reason why the statutory period within which the Commissioner may make a deficiency determination pursuant to section 183(e)(4) must be coterminous with the period within which a taxpayer may claim refund of an overpayment. Sections 6501 and 6511 provide different periods of limitations for making deficiency determinations and claiming refunds. Thus, it is not infrequent that this Court acquires deficiency jurisdiction based on a timely notice of deficiency and at the same time lacks

overpayment jurisdiction regarding the same year.  See

Commissioner v. Lundy, 516 U.S. 235 (1996).[6]

When it enacted section 183(e)(4), Congress limited the

effect of the section 183(e)(4) extension to assessments

attributable to section 183 activity.  However, if the section

183(e)(4) extension is construed to also apply to refund claims,

unintended consequences may arise.  In a refund context, it is

possible that matters other than the putative section 183

activity could be placed in issue by the Commissioner, even

though such matters would be time barred for purposes of

assessing a deficiency.  For example, in Bachner v. Commissioner,

109 T.C. 125 (1997), the taxpayer filed a petition in this Court

contesting a notice of deficiency and claiming an overpayment of

all taxes withheld from his wages.  The assessment of the

deficiency determined by the Commissioner was barred by the

statute of limitations.  Nevertheless, the Commissioner argued

that any overpayment was restricted to the excess of the amount

---

[6]Conversely, in Barton v. Commissioner, 97 T.C. 548 (1991),
we held that statutes governing our overpayment jurisdiction gave
us authority to determine whether the taxpayer was liable for
sec. 6621(c) increased interest, whereas in White v.
Commissioner, 95 T.C. 209 (1990), we held that we lacked
deficiency jurisdiction to determine whether a taxpayer was
liable for sec. 6621(c) increased interest.  Those different
outcomes were based on the literal differences between the
provisions of the Code controlling our jurisdiction over
overpayments and deficiencies.

of tax paid through withholding over the correct amount of tax that was properly due, regardless of the fact that the Commissioner was time barred from assessing the proper tax. The taxpayer argued that we could not reduce any overpayment by considering unassessed tax liabilities which were barred by the statute of limitations on assessment. We agreed with the Commissioner, holding:

> Under the principles established by the Supreme Court in Lewis v. Reynolds, 284 U.S. 281 (1932), a taxpayer's claim for refund must be reduced by the amount of the correct tax liability for the taxable year, regardless of the fact that the Commissioner can no longer assess any deficiency for the taxable year. * * * [Bachner v. Commissioner, 109 T.C. at 130.]

A literal reading of the statutes in issue avoids this potential for raising issues other than those related to the section 183 activity.

Finally it has been suggested that the provisions of section 183(e)(4) in combination with the taxpayer's unilateral election under section 183(e) constitute an "agreement" between the taxpayer and the Commissioner within the meaning of section 6501(c)(4). But there is no requirement in section 183(e) that the taxpayer and the Commissioner agree and execute a written extension agreement, and no such agreement was executed in this case. A statutory provision mandating an enlargement of "the statutory period for the assessment of any deficiency" is not an "agreement", and there is nothing in the statute or the

legislative history to support such a theory.  Indeed, in Crawford v. Commissioner, 97 T.C. 302 (1991), we explicitly held that section 183(e)(4) "modifies" the normal 3-year period of limitations in section 6501(a) with respect to a section 183 activity for which an election was made.  As a result, we held that a written agreement to extend the period of limitations pursuant to section 6501(c)(4) that was executed after the normal 3-year period, but before expiration of the period as modified by section 183(e)(4), was effective to extend the period of limitations for the limited purpose of assessing deficiencies attributable to the section 183 activity.  Our holding that section 183(e)(4) modified the normal 3-year period of limitations in which a section 6501(c)(4) agreement can be executed is clearly inconsistent with any suggestion that a section 183(e) election is an agreement within the meaning of section 6501(c)(4).  The last sentence of section 6501(c)(4) explicitly provides that a written agreement to extend the period of limitations may be extended by "subsequent agreements".  In Crawford v. Commissioner, supra, we clearly did not consider this provision regarding "subsequent agreements" to be applicable because we did not view the previous section 183(e) election as an agreement.  A taxpayer's election pursuant to section 183(e) is simply a unilateral act that has statutory consequences; i.e., it allows the taxpayer additional time to qualify for a

presumption regarding certain activity and gives the Commissioner additional time to assess a deficiency regarding that activity.

Overpayment jurisdiction in this case is dependent upon the meaning of language in statutes of limitations.  Statutes of limitation provisions are to be strictly construed in favor of the Government.  Zeier v. United States, 80 F.3d 1360, 1365 (9th Cir. 1996).  As the Supreme Court has stated:

> we reject any suggestion that we elevate the 'perceived unfairness to taxpayers' over our duty to strictly construe in favor of the government a statute of limitation when the petitioner seeks application of the statute so as to bar the rights of the government. Fehlhaber, 954 F.2d at 658." * * * [Bufferd v. Commissioner, 506 U.S. 523, 532 (1993) (quoting Green v. Commissioner, 963 F.2d 783, 789 (5th Cir. 1992), affg. T.C. Memo. 1991-78).]

And as recently stated by the Supreme Court in construing the statutory language in sections 6512(b)(3) and 6511:

> We are bound by the language of the statute as it is written, and even if the rule Lundy advocates might "accor[d] with good policy," we are not at liberty "to rewrite [the] statute because [we] might deem its effects susceptible of improvement."  Badaracco, supra, at 398.  Applying §6512(b)(3)(B) as Congress drafted it, we find that the applicable look-back period in this case is two years, measured from the date of the mailing of the notice of deficiency.  Accordingly, we find that the Tax Court lacked jurisdiction to award Lundy a refund of his overwithheld taxes.  The judgment is reversed.  [Commissioner v. Lundy, 516 U.S. at 252-253.]

More recently, in rejecting a taxpayer's attempt to infer an equitable tolling exception into the limitations provisions of section 6511, the Supreme Court stated:

Section 6511's detail, its technical language, the iteration of the limitations in both procedural and substantive forms, and the explicit listing of exceptions, taken together, indicate to us that Congress did not intend courts to read other unmentioned, open-ended, "equitable" exceptions into the statute that it wrote. * * * [United States v. Brockamp, 519 U.S. 347, 352 (1997).]

We should follow the admonitions of the Supreme Court and apply sections 6512(b), 6511(c), 6501(c)(4), and 183(e)(4) in accordance with their literal terms and hold that we lack jurisdiction to determine any overpayments in this case.

JACOBS, GERBER, WELLS, WHALEN, COLVIN, HALPERN, THORNTON, and MARVEL, JJ., agree with this dissent.